IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * | · 2012 MAR 27  P 4: 22 |
| GERBER LIFE INS. CO., | * | CLERK'S OFFICE<br>AT BALTIMORE |
| Interpleader Plaintiff | * |  |
|  |  | BY: _____ DEPUTY |
| v. | * | CIVIL NO.  JKB-11-2205 |
| SHERRY D. WARD et al., | * |  |
| Interpleader Defendants | * |  |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Gerber Life Insurance Company brought this interpleader action to resolve the question of rightful claimants on a life insurance policy on the late Dante X. Sweeney ("Dante"). (Compl., ECF No. 1.) Accepting the uncontested allegations of the complaint as true and relying upon the exhibits attached to the complaint, the Court finds that Sherry D. Ward is the mother of Dante and that Charles M. Sweeney, Jr. ("Mr. Sweeney"), is the father of Dante. (Id. ¶¶ 11, 12; Ex. 1, Death Certificate for Dante X. Sweeney.) Ms. Ward applied for the life insurance policy at issue in February 1994 when her son was a minor. (Id. ¶ 13; Ex. 2, Policy Application.) The application stated: "BENEFICIARY – Unless otherwise requested the parents of the Proposed Insureds shall be the beneficiaries," and it further stated that the application was part of the policy. (Id. ¶ 14; Ex. 2.) Ms. Ward did not make any requests as to beneficiaries. (Id.)

The policy amount was $5,000 when it was issued, and the amount was automatically doubled to $10,000 on the first policy anniversary (February 5, 2009) after Dante turned 21 years of age. (Id. ¶ 15; Ex. 1 & 2.) Also, when he turned 21, Dante became the owner of the policy according to the policy's terms. (Id. ¶ 16; Ex. 2, Policy at 5.) Another policy provision provided that if more than one beneficiary was alive when the benefit became payable, the proceeds were

to be shared equally, unless otherwise specified. (*Id.* ¶ 17; Ex. 2, Policy at 5.) The policy allowed the owner to change the owner or named beneficiary at any time during the insured's life by making a written request. (*Id.*; Ex. 2, Policy at 5.) Gerber Life received no requests to change the owner or beneficiary of the policy. (*Id.* ¶ 18.) In January 2009, Ms. Ward took out a policy loan of $643. (*Id.*) Dante died on December 7, 2010. (*Id.* ¶ 21.) That same month, his mother was appointed personal representative of his estate. (*Id.* ¶ 22; Ex. 3.) The policy indicates that the deceased's estate may be the residual beneficiary of any death benefits. (*Id.* ¶ 22; Ex. 2, Policy at 5.)

Ms. Ward submitted a claim to Gerber Life, and on January 27, 2011, the company paid $4,657.29 to her; that amount constituted her half of the death benefit minus the outstanding loan balance. (*Id.* ¶ 23.) Mr. Sweeney has not made a claim under Dante's policy, and Gerber Life has not paid him anything. (*Id.*) In January 2011, Ms. Ward wrote letters to Gerber Life stating her belief that it would be unfair for Mr. Sweeney to receive a share of the death benefit because Ms. Ward was the one who paid the policy premiums and because Mr. Sweeney was not a part of Dante's life; furthermore, she stated that Mr. Sweeney owed her back child support. (*Id.* ¶ 25.) Ms. Ward also contacted the Baltimore City Office of Child Support Enforcement, which then contacted Gerber Life and requested the company delay disbursement of any funds while it pursued a court order regarding the back child support, but Gerber Life never received a copy of any order pertaining to child support. (*Id.* ¶ 26.) (This Court has found no evidence that any such order has ever been entered.) Death benefits in the amount of $4,637.47 remain unpaid on the policy. (*Id.* ¶ 28.) That amount of $4,494.93, which represents the unpaid death benefits minus awarded attorney's fees and costs, has been deposited into the Court's registry, and Gerber Life has been discharged from the case. (ECF Nos. 7, 8.)

In additional filings in this Court, Ms. Ward has submitted a copy of a statement from the funeral home, which charged her $5,497 for Dante's funeral expenses, a copy of a statement from the cemetery, which charged her $3,861 for the lot and burial expenses, and a copy of another statement from the cemetery charging her $2,318 for grave marker and perpetual care expenses. (ECF No. 12.) She has also submitted a copy of a letter from the Baltimore City Office of Child Support Enforcement indicating that, as of December 15, 2011, Mr. Sweeney owed Ms. Ward $2,319.57 in back child support. (ECF No. 19.) In addition, she submitted a copy of another letter, dated December 21, 2011, from the same office indicating it was reviewing her case (Case Number 790022229) and had forwarded a demand letter to Mr. Sweeney requesting payments. (ECF No. 21.) After receiving notice of the lawsuit and a request for waiver of service by certified mail, Mr. Sweeney contacted counsel for Gerber Life, advised he was Dante's father, and acknowledged receipt of the notice and request for waiver. (ECF No. 20.) To date, Mr. Sweeney has not otherwise responded to the notice and request for waiver and has filed nothing in this Court.

The policy's terms are unambiguous on the question of beneficiaries. Dante's parents are the beneficiaries, and despite the perceived unfairness of Ms. Ward's having paid for the policy but not receiving the full benefit of it, Mr. Sweeney is a lawful beneficiary of Dante's policy. Clearly, moral equities would tip the balance in favor of Ms. Ward's receiving the full amount based upon Mr. Sweeney's owed child support and Dante's funeral and cemetery expenses *if* the language of the policy permitted those things to be taken into account.[1] And nothing stands in Mr. Sweeney's way of doing what is morally right here by seeing that the unpaid policy proceeds

---

[1] It is conceivable the State of Maryland's Department of Human Resources, which has statewide responsibility for child support enforcement, might intervene to assure that the back child support is fully paid from the policy's proceeds. The order will require a waiting period before proceeds are paid to Mr. Sweeney to allow the State to intervene.

are used to help shoulder Dante's final expenses.  But the Court cannot order a result contrary to the language of the policy.

Accordingly, a separate order will be entered awarding the unpaid policy proceeds to Mr. Sweeney and otherwise reflecting the contents of this opinion.

DATED this _27_ day of March, 2012.

BY THE COURT:

James K. Bredar
United States District Judge

4